# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLENNIUM DENTAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DR. ALLEN SCOTT TERRY, DDS, et al., <br><br> Defendants. | Case No. 8:18-cv-00348-DOC-KES <br><br> CERTIFICATION AND ORDER TO SHOW CAUSE RE CONTEMPT |

The undersigned Magistrate Judge ordered Dr. Robert Gregg to appear at a mediation between the parties to this case and, after he failed to do so, ordered Dr. Gregg to show cause why he should not be held in contempt. Because the limited contempt powers granted to Magistrate Judges in 28 U.S.C. § 636(e) do not extend to these circumstances, the Magistrate Judge certifies the following facts and commends to the District Judge the issues of (a) whether Dr. Gregg should be held in contempt, and (b) what sanctions should be imposed, if any. See Bingman v. Ward, 100 F.3d 653, 657-58 (9th Cir. 1996), cert. denied, 520 U.S. 1188 (1997);

United States v. Brumbaugh, No. 09-5012, 2010 WL 724677 at *2, 2010 U.S. Dist. LEXIS 24961 at *4-5 (W.D. Wash. Feb. 26, 2010) ("In certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'") (quoting Church v. Steller, 35 F. Supp. 2d 215 (N.D.N.Y. 1999)).

IT IS HEREBY ORDERED that Dr. Gregg shall appear before the Honorable David O. Carter—at a time and place to be set by him in a separate Order—and then and there show cause, if any he has, why he should not be adjudged in contempt by reason of the facts certified herein.

In accordance with 28 U.S.C. § 636(e), the Magistrate Judge certifies the following facts, which are based on the Magistrate Judge's personal knowledge, representations of counsel, and testimony Dr. Gregg gave before the Magistrate Judge at a hearing held on April 12, 2019:

1. On Thursday, April 11, 2019, the parties appeared for a settlement conference with the Magistrate Judge. Dr. Gregg, the president and co-founder of Plaintiff Millennium Dental Technologies, Inc., did not appear at this conference.

2. The parties were unable to reach a settlement, and the Magistrate Judge ordered them to continue mediating before the Honorable Jay C. Gandhi (Ret.) at the JAMS office in Irvine at 10:00 a.m. on Friday, April 12.

3. Because Dr. Gregg had failed to appear at a prior mediation before Judge Gandhi, and because counsel believed Dr. Gregg's continued absence would impede the parties' ability to reach a final settlement agreement, the Magistrate Judge ordered Dr. Gregg to be present at the April 12 mediation. (Dkt. 127.)

4. For approximately two weeks prior to April 11, Dr. Gregg had been experiencing symptoms of what he believed to be a sinus infection, i.e., congestion, a runny nose, fatigue, and laryngitis. He continued to see dental patients several days a week, although he limited his schedule to tasks he considered "light" and "easy to do."

5. *After* learning of the Magistrate Judge's order requiring him to appear at the April 12 mediation, Dr. Gregg made an appointment with his primary care doctor in Newport Beach, Dr. David Bloom, for 11:00 a.m. on April 12.

6. Dr. Gregg's wife drove him to the appointment, which lasted approximately 45 minutes. Dr. Bloom performed tests to determine whether Dr. Gregg had bronchitis and/or pneumonia; the results of these tests were expected on Monday, April 15. In the meantime, Dr. Bloom recommended that Dr. Gregg rest, drink liquids, and take over-the-counter medications for relief of symptoms; Dr. Bloom did not prescribe any medication.

7. According to Plaintiff's counsel, Dr. Gregg was prepared to come to the mediation around 12:00 p.m., after the doctor's appointment. By that time, however, Judge Gandhi had informed the Magistrate Judge that Dr. Gregg had failed to appear for the 10:00 a.m. mediation. Judge Gandhi adjourned the mediation, believing that it would not be fruitful without Dr. Gregg present.

8. At 11:30 a.m., the Magistrate Judge issued an order to show cause ("OSC") directing Dr. Gregg to appear before the Magistrate Judge at 2:00 p.m. and explain his failure to appear at the mediation.

9. Dr. Gregg and Plaintiff's counsel appeared at the 2:00 p.m. OSC hearing. Dr. Gregg drove himself to the courthouse. The Magistrate Judge observed that Dr. Gregg: (a) was dressed in a suit, (b) did not suffer from any noticeable sneezing or coughing, and (c) was able to stand and the lectern and answer questions from the Magistrate Judge without any visible difficulty.

10. It is the opinion of the Magistrate Judge that Dr. Gregg was physically able to appear at the April 12 mediation but chose not to, despite knowing that the Magistrate Judge had ordered him to do so.

11. It is also the opinion of the Magistrate Judge that, at the April 12 OSC hearing, Dr. Gregg willfully exaggerated the severity of his symptoms. For instance, he referred repeatedly to being at high risk for pneumonia but, when

pressed as to why, stated that: (a) he had last suffered from pneumonia three years ago, (b) he was not hospitalized for this prior bout of pneumonia, and (c) he had had his tonsils removed. Dr. Gregg also stated that he went to see Dr. Bloom on April 12 because he wanted to "stay alive" for his family, even though there is no indication that his present condition (or, indeed, his past bout of pneumonia) was life-threatening.

    12.    The Magistrate Judge finds that Defendants incurred $15,076.14 in fees and costs as a result of Dr. Gregg's failure to obey the Court's order to appear at the mediation, which represents the following:

    a.    $7,500 for half of the JAMS mediation fee charged by Judge Gandhi for the April 12 session;[1]

    b.    $982.14 in travel expenses for Pamela Johnson, a Minnesota-based representative of Defendants' insurance carrier;[2]

    c.    $5,364 in attorney's fees for participating in the mediation and the OSC hearing (1.8 hours by attorney Mark. A Finkelstein at $705 per hour and 7.8 hours by attorney Brent S. Colasurdo at $525 per hour); and

    d.    $1,230 in attorney's fees for preparing evidence of Defendants'

---

[1] This is less than the $13,592 that Defendants seek for the "JAMS mediation fee for April 12 session and interim negotiations." (Dkt. 137-2 at 3.) However, the JAMS bill shows that Judge Gandhi charged a $15,000 fee for the April 12 session and that Defendants were only responsible for half. (Dkt. 137-3 at 3; see also Dkt. 155 at 2.) Other JAMS fees were not incurred as a result of Dr. Gregg's failure to comply with this Court's order to appear on April 12.

[2] This is half of the $1,964.28 requested by Defendants for Ms. Johnson's travel expenses. (Dkt. 17-2 at 3.) Ms. Johnson initially traveled to California for the April 11 hearing and extended her trip to attend the April 12 mediation. The only expenses fairly attributable to Dr. Gregg's failure to appear on April 12 are an extra night of lodging and change fees charged by the airline. Half of the expenses sought by Defendants is a fair approximation of these expenses.

attorneys fees and costs (1 hour by Mr. Finkelstein at $705 per hour and 1 hour by Mr. Colasurdo at $525 per hour).³

13. Although Defendants seek fees and costs resulting from Dr. Gregg's failure to appear at a March 6 JAMS mediation with Judge Gandhi and the April 11 settlement conference with Judge Scott (see Dkt. 137), these fees and costs were not incurred as a result of Dr. Gregg's failure to obey this Court's order to appear at the April 12 JAMS mediation.

DATED: April 22, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge

---

³ This is less than the $3,123 in attorney's fees that Defendants seek for preparing evidence of Defendants' attorneys' fees and costs, representing 1.6 hours by Mr. Finkelstein at $705 per hour and 3.8 hours by Mr. Colasurdo at $525 per hour. (See Dkt. 137-2 at 3.) The Magistrate Judge has reduced this amount because some of these hours represent time the attorneys spent compiling evidence of fees and costs incurred prior to the Court's order to appear on April 12, even though the Court indicated at the OSC hearing that such fees and costs likely were not compensable.